UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WALTER R.,

                Plaintiff,

      v.                                     **DECISION AND ORDER**

                                                    23-CV-6706S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      1.      Plaintiff Walter R.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed his applications with the Social Security Administration on September 29, 2020. He alleged disability beginning that date due to carpal tunnel syndrome, history of torn Achilles tendons, substance use, depressive disorder, anxiety disorder, post-traumatic stress disorder (or "PTSD"), and schizophrenia. Plaintiff's applications were denied and he thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On December 13, 2021, ALJ Connor O'Brien commenced a telephonic hearing due to the COVID-19 pandemic, which was continued on May 19, 2022, at which

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Plaintiff (represented by counsel), Vocational Experts Helene Feldman and Susan Moyes, and Impartial Medical Expert David Peterson, Ph.D., appeared and testified. (R.[2] at 37-83, 84-103.) Plaintiff was 46 years old on the onset date with a high school education and past relevant work as an automobile salesperson and retail store manager. (R. at 26.)

4. The ALJ considered the case *de novo* and, on November 3, 2022, issued a written decision denying Plaintiff's applications for benefits. (R. at 14.) After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the pending action challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 15.) Plaintiff filed a Response on May 30, 2024, electing not to file a Reply Brief. (Docket No. 16.) This Court then took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be granted, Defendant's Motion will be denied, and this case will be remanded for further proceedings.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's November 3, 2022, decision became the Commissioner's final decision on this matter when the Appeals Council declined review.

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

  9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

  10. Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step.  See Yuckert, 482 U.S. at 146 n.5.  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See

42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

11. The ALJ here analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity from the September 29, 2020, onset date.  (R. at 17.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  carpal tunnel syndrome, torn Achilles tendons, substance use, depressive disorder, and anxiety disorder.  (Id.)

12. At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

13. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work but with the following nonexertional limitations.  To wit, the ALJ found that Plaintiff could frequently push and pull light weights and handle and finger bilaterally.  The ALJ also noted that Plaintiff could perform simple and detailed tasks but not complex tasks.  The ALJ found that Plaintiff could adjust to occasional changes in work setting and make occasional work-related decisions.  (R. at 19.)

14. At Step Four, upon the Vocational Expert's opinion the ALJ found that Plaintiff was unable to perform his past relevant work because an individual of Plaintiff's age, education, work experience, and RFC would not be able to perform those jobs.  (R. at 17, 26.)  Nevertheless, at Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 27.)  The ALJ did so by posing hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's characteristics.  The Expert further opined that this hypothetical claimant could

perform such representative occupations as a marker, router, and cafeteria attendant. (Id.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 27-28.)

15.Plaintiff now argues that the ALJ failed to properly evaluate his substance use disorder without first establishing his disabilities for other causes.  See Jessica B. v. Comm'r, No. 20-CV-1512-MWP, 2022 WL 3584365, at *3-5 (W.D.N.Y. Aug. 22, 2022).  He also contends that the ALJ failed to reconcile the mental RFC with the more restrictive opinions from consultative examiner Adam Brownfeld, Ph.D., and Impartial Medical Expert Dr. Peterson.

16.Solely at issue here is the ALJ's mental RFC determination because Plaintiff does not contest the ALJ's consideration of his physical ailments.  See Jessica B., 2022 WL 3584365, at *5 (this Court need not comment on the ALJ's consideration of claimant's physical ailments); cf. Pourpore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (claimant failed to argue question, hence claim of error deemed waived).

17.This Court concludes that the ALJ erred in not first determining whether Plaintiff had a mental disability before considering the effects of his substance use on his ability to work.  This warrants remand for further proceedings.

18.For disability applications filed after March 27, 2017, Social Security regulations require that the agency consider the persuasiveness of medical opinions while not deferring or giving any specific evidentiary weight to any medical opinion.  See, e.g., 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The Social Security Administration considers the supportability and consistency of the opinions as the most important factors in assessing that opinion's persuasiveness.   Id. §§ 404.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain her approach with respect to

supportability and consistency when considering a medical opinion.  Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing 20 C.F.R. § 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion would be.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Furthermore, the more relevant the objective medical evidence and supporting explanations presented by the medical source in support of their opinion, the more persuasive that medical opinion would be.  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).

       19.    Under the Social Security Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a controlling factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J); see 20 C.F.R. §§ 404.1535, 416.935; Jessica B., 2022 WL 3584365, at *3.  Where nonexertional limitations include substance abuse, the ALJ must first determine disability under the sequential analysis, then consider whether the substance use is "a contributing factor material to the determination of disability – that is whether the claimant would still be found disabled if [she] stopped using drugs or alcohol."  Lynn v. Colvin, No. 15-CV-6665L, 2017 WL 743731, at *2 (W.D.N.Y. Feb. 27, 2017).  Further, "the regulations make clear that 'the ALJ must first make a determination as to disability by following the five-step sequential evaluation process, without segregating out any effects that might be due to substance use disorders.'"  Jessica B., 2022 WL 3584365, at *3 (quoting Morales v. Colvin, No. 13 Civ. 06844(LGS)(DF), 2015 WL 13774790, at *17 (S.D.N.Y. Feb. 10, 2015) (citation omitted), adopted, 2015 WL 2137776 (S.D.N.Y. May 4, 2015)).

20. In making the contributing factor determination, "the Commissioner must evaluate which of the claimant's 'current physical and mental limitations, upon which [the Commissioner] based [her] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of the [claimant's] remaining limitations would be disabling.'" Jessica B., 2022 WL 3584365, at *3 (quoting 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2)).

21. This Court finds that here the ALJ inappropriately determined Plaintiff's disability stemming from his substance use before first deciding whether his mental or physical conditions disabled him. The ALJ also failed to separate Plaintiff's other claimed impairments from his substance use and addressed first the former. The ALJ considered Plaintiff's substance use as the controlling factor in determining his disability.

22. From the presented medical evidence, on January 14, 2021, Dr. Brownfeld examined Plaintiff and diagnosed him with cocaine use disorder, alcohol use disorder, cannabis use disorder, and major depressive disorder, with poor prognosis given his substance use. (R. at 863-64; see R. at 22.) Dr. Brownfeld found that Plaintiff was markedly limited in regulating emotions, controlling behavior, and maintaining well-being from psychiatric and substance abuse problems. (R. at 863; see R. at 22.) He opined that there was no evidence of limitation in Plaintiff's understanding, remembering, or applying simple and complex directions and instructions, using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing tasks at a consistent pace, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene and appropriate attire, or being aware of normal hazards and taking appropriate precautions.

(R. at 863; see R. at 22.) Dr. Brownfeld found that the results of this evaluation appeared to be consistent with Plaintiff's psychiatric and substance use problems. (R. at 863.) The doctor, however, did not separately analyze Plaintiff's depression from his substance use disorders.

23. The ALJ, however, did not cite Dr. Brownfeld in her "paragraph B" criteria analysis for determining the severity of Plaintiff's mental impairments but later found Dr. Brownfeld's opinion mostly persuasive because it mostly matched his clinical findings. (R. at 22; but cf. R. at 18-19 (ALJ's severity analysis).) The ALJ found Dr. Brownfeld's observation of good insight and judgment inconsistent with marked limitations in regulating emotions, controlling his behavior, and maintaining his well-being. The ALJ acknowledged Dr. Brownfeld's identified marked limitations were consistent with Plaintiff's ongoing substance abuse. (Id.)

24. At Step Two of the sequential analysis the ALJ found that Plaintiff had mild or moderate limitations for the "paragraph B" criteria based on Dr. Peterson's testimony. (R. at 18-19.) During the administrative hearing, Dr. Peterson identified Plaintiff's severe impairments of alcohol use disorder, severe cocaine use disorder, cannabis use disorder, major depressive disorder, anxiety disorder, and PTSD, while ruling out unspecified schizophrenia spectrum and other psychotic disorder as opposed to substance induced or exacerbated version of disorder. Dr. Peterson noted that Plaintiff had clinical issues with compliance. (R. at 54-56; see R. at 23.) The doctor then evaluated Plaintiff's substance use disorder for its impact on his limitations. (R. at 54-58.)

25. Dr. Peterson assessed Plaintiff's "paragraph B" criteria by comparing his mental condition with and without substance use. As for Plaintiff's understanding,

9

remembering or applying information, the doctor found that Plaintiff had mild impairment with substance use but no limitation without substance use.  As for interacting with others Dr. Peterson opined that Plaintiff had mild limitations with or without substance use.  On concentrating, persisting, or maintaining pace, Dr. Peterson observed that Plaintiff had moderate limitation due to substance use but improved to mild limitation without substance use.  Finally, for adapting or managing himself, Dr. Peterson testified that Plaintiff had marked limitations due to substance use but no limitation without substance use.  (R. at 57-58; see R. at 18-19.)  Dr. Peterson consequently determined that Plaintiff's limitations did not meet or equal any mental impairment listings and then opined that when Plaintiff abused substances he would be limited to simple, repetitive tasks that would improve with sobriety.  (R. at 59; see R. at 23.)

26. These doctors also focused on Plaintiff's substance use, with Dr. Brownfeld diagnosing Plaintiff's depression together with his substance use while Dr. Peterson testified to Plaintiff's limitation arising from substance use while stating the diagnosis of his major depressive disorder and comparing his mental condition with and without substance use.  (See R. at 54-59, 863-64.)

27. At Step Three of the analysis in not finding a listed impairment, the ALJ combined Plaintiff's persistent polysubstance use disorders with his psychiatric disorders.  (R. at 20.)  The ALJ also found mostly persuasive the opinions of Drs. Brownfeld and Peterson but diverged from their respective marked limitation findings because of Plaintiff's substance use.  (R. at 22-23.)  The ALJ found that marked limitations were consistent with the medical records showing ongoing substance use and Plaintiff's admission to continuous substance use.  (R. at 22.)

28. The ALJ first determined Plaintiff's limitations, such as finding marked limitations regulating emotions, moderate limitations in concentrating, and mild limitations in understanding from his continued substance use. Then the ALJ determined whether Plaintiff was otherwise disabled absent substance use. The ALJ's finding presumed that Plaintiff's substance use was the controlling factor in his disability.

29. This Court finds that this analysis violated Social Security regulations by inverting the disability analysis. The ALJ incorrectly determined Plaintiff's disability from his substance use without first determining whether Plaintiff's asserted depression or other mental causes were disabling. See 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; see Jessica B., 2022 WL 3584365, at *3-4. The ALJ thus conflated Plaintiff's substance use analysis with "the disability determination itself." Jessica B., 2022 WL 3584365, at *4. As in Piccini v. Commissioner, No. 13-cv-3461 (AJN) (SN), 2014 WL 4651911, at *15 (S.D.N.Y. 2014), adopted, 2024 WL 4651911 (S.D.N.Y. Sept. 17, 2014), the ALJ here "wove in evidence" concerning Plaintiff's substance abuse preventing this Court from applying the substantial evidence standard to uphold the finding of no disability. Further, the ALJ failed to cite the applicable substance abuse regulations, suggesting error. See Jessica, 2022 WL 3584365, at *4 (citing cases). This error warrants remand.

30. Furthermore, the ALJ also found limitations in the mental RFC that differed from the opinions of Drs. Brownfeld and Peterson. (R. at 22-23.) This Court, however, finds that the ALJ solely evaluated these opinions based on the effects of Plaintiff's substance use without initially considering his mental impairments. The ALJ rejected more restrictive limitations found in these opinions because they arose from his substance

11

use. Neither these doctors nor the ALJ, however, made findings whether either of these limitations arose from Plaintiff's depression or any disability due to his depression.

31.  Remand therefore is required for the ALJ to appropriately determine whether Plaintiff has a mental condition that precludes work. Consistent with the Act and regulations the ALJ should first determine Plaintiff's mental disability, if any, before assessing whether his substance use "constitutes a contributing factor material to that determination." Piccini, 2014 WL 4651911, at *15; Jessica B., 2022 WL 3584365, at *5; see 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

32.  Accordingly, having reviewed the ALJ's decision and considered Plaintiff's argument, this Court finds that the ALJ erred in considering Plaintiff's substance use disorder without first determining whether Plaintiff's mental health impairment disabled him. This case is remanded for the ALJ to consider Plaintiff's mental condition first, determine whether he is disabled therefrom, and, if necessary, determine the effect of Plaintiff's substance abuse disorder is a contributing factor to his identified disabilities.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:	February 5, 2025
	Buffalo, New York

					s/William M. Skretny
					WILLIAM M. SKRETNY
					United States District Judge